**TEXAS COMMERCE BANK NATIONAL ASSOCIATION, Plaintiff–Appellant,**

v.

**CAPITAL BANCSHARES, INC., et al., Defendants–Appellees.**

**TEXAS COMMERCE BANK NATIONAL ASSOCIATION, Plaintiff–Appellee,**

v.

**CAPITAL BANCSHARES, INC., Defendant–Appellant.**

Nos. 89–6037, 89–6089.

United States Court of Appeals, Fifth Circuit.

Aug. 9, 1990.

Rehearing Denied Sept. 7, 1990.

1572

Robert J. King, Edward L. Friedman, Liddell, Sapp, Zivley & Hill, Houston, Tex., for Texas Commerce Bank Nat. Ass'n.

Henri–Ann Nortman, Brill, Sinex & Hohmann, Houston, Tex., for Capital.

Daniel Lund, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, La., Joanne M. Vorpahl, Houston, Tex., for Frank Sullivan, et al.

Robert A. Rowland, Richard W. Riehl, Johnson & Gibbs, Houston, Tex., for Simpson & Pogue.

Before GARZA, HIGGINBOTHAM and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

Texas Commerce Bank, N.A. and Capital Bancshares, Inc. appeal from a summary judgment granting partial relief to Texas Commerce. We affirm in part and reverse and remand in part.

In July of 1986 Capital executed a promissory note for $3,988,000 in favor of Texas Commerce. The note provided that the interest rate on any past due amount would be the highest interest rate allowed by law. On the same day the directors of Capital executed a letter agreement which provided that, if Capital did not pay the principal and accrued interest when due, they would "cause [Capital] to have sufficient funds" to pay the overdue amount. This obligation would be deemed satisfied under the letter "only when [Texas Commerce] has received such funds."

When the note matured Capital did not pay the balance due. The outstanding principal balance was approximately $1.5 million and Capital assigned a $1.5 million note to Texas Commerce as additional security. The assigned note was made by FIserve, Inc. to Capbanc Computer Corporation, a Capital subsidiary. The FIserve note permitted the holder, upon default by FIserve, to accelerate the payments due. The FIserve note also incorporated a portion of a purchase and sale agreement between FIserve and Capbanc, which provided that

Capital Bank & Trust, another subsidiary of Capital, would enter into a data processing agreement with FIserve. The incorporated portion of the purchase and sale agreement also stated that, in the event Capital Bank & Trust or its successor terminated the data processing agreement "prior to the maturity date of the [FIserve note]," then the FIserve note would become void and FIserve would have no further obligation to pay.

FIserve ultimately defaulted on the note. Texas Commerce did not take action to declare the payments due, and in April 1988 the FDIC, as receiver for Capital Bank & Trust, terminated the data processing agreement. The cancellation provision in the purchase and sale agreement then took effect and rendered the note worthless.

Texas Commerce sued Capital for the amount due on the Capital note and the directors for breach of the letter agreement. Issues were presented by motions to dismiss and for summary judgment. The district judge rendered judgment that Texas Commerce take nothing from the directors, concluding that the letter was not a guaranty but merely a "comfort letter." The judge rejected Capital's argument that Texas Commerce's failure to accelerate the FIserve note relieved Capital of liability, and ruled that Capital was liable to Texas Commerce for the unpaid principal on the Capital note, prejudgment interest, and attorney's fees.

### The Letter Agreement

Texas Commerce argues that the district judge erred in concluding the letter agreement was merely a "comfort letter." Texas Commerce concedes that the letter is not a proper guaranty, but asserts that the letter unambiguously requires the directors to cause Capital to have funds to pay principal and interest on the note, recites that this obligation is not fulfilled until "Lender has received such funds," and otherwise satisfies all requirements of a contract.

We cannot accept Texas Commerce's argument that while the letter is not a formal

guaranty it nevertheless acts as a guaranty. A guaranty is defined by the obligation undertaken. "A guaranty is an undertaking by the guarantor to answer for the payment of some debt or the performance of some contract of another person in the event of default." *United States v. Vahlco Corp.*, 800 F.2d 462, 465 (5th Cir.1986). "In a strictly technical sense the word 'guaranty' refers to certain legal consequences attached to certain groups of operative facts by the courts...." 68 Tex. Jur.3d *Suretyship and Guaranty* § 154 (1989). An obligation cannot therefore evade the label "guaranty" and nevertheless act precisely as a guaranty.

In addition, enforcement of the letter as a simple contract does not square with the relief Texas Commerce has requested. Both in the court below and in this Court, Texas Commerce has urged that by virtue of the letter the directors are jointly and severally bound to pay $1.5 million to Texas Commerce. Under the letter, however, no obligation to pay runs between the directors and Texas Commerce. Accordingly, enforcement of the letter would not accomplish what Texas Commerce seeks to accomplish. The letter must therefore stand or fall as a guaranty.

Under Texas law, the directors are not liable to Texas Commerce as guarantors under the letter agreement. In order for a guaranty to be enforceable it must, with reasonable clearness, evidence an intent on the part of a party to become liable on an obligation in the event of default by the primary obligor. *Block v. Aube*, 718 S.W.2d 914, 915 (Tex.App.—Beaumont 1986, no writ). A guarantor is a "favorite of the law" and a guaranty is therefore construed strictly in favor of the guarantor. *McKnight v. Virginia Mirror Co.*, 463 S.W.2d 428, 430 (Tex.1971). A guarantor's undertaking may not be extended by construction or implication. *Coker v. Coker*, 650 S.W.2d 391, 394 n. 1 (Tex.1983).

The letter agreement does not evidence an intent on the directors' part to become liable in the event of Capital's default. An agreement to "cause [a debtor] to have sufficient funds" simply does not constitute a promise to answer for the debt of another. In a similar case a Texas appellate court affirmed a summary judgment in favor of an alleged guarantor, holding that a bank had not guaranteed a debtor's obligation to a holder of the debtor's note. *Farmers State Bank v. First State Bank of Liberty*, 317 S.W.2d 768, 770–71 (Tex. Civ.App.—Waco 1958, no writ). The debtor had given the note for the construction of his home, and the bank wrote to the note holder "We have agreed to either finance direct or secure for [the debtor] from the sale of ... stock which he owns and we have in our possession the necessary amount to pay off this home...." The court concluded that this statement was neither a guaranty nor a promise to do anything for the holder. *Id.*

The additional language in the present case, to the effect that the directors would see to it that Texas Commerce "has received such funds," does not in any respect clarify the directors' obligation; the language indicates a pledge to secure funding, not a promise by the directors to pay Texas Commerce on Capital's default. The district court therefore correctly construed the letter and properly granted summary judgment against Texas Commerce. *City of Austin v. Decker Coal Co.*, 701 F.2d 420, 425 (5th Cir.), *cert. denied*, 464 U.S. 938, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983).

### *Prejudgment Interest*

■ Texas Commerce argues that the district judge erroneously awarded only $89,403.75 in prejudgment interest. The amount of the award corresponds to approximately 6.2% of the unpaid balance on the Capital note, and Texas Commerce speculates that the judge arrived at this figure by consulting the wrong statute. One of the pertinent statutes provides for an interest rate of six percent when no rate is specified by the parties. Tex.Rev.Civ. Stat.Ann. art. 5069—1.03 (Vernon 1987). Texas Commerce points out that the Capital note provided for the payment of interest at the highest rate allowed by law, and therefore argues that the district judge should have applied article 5069—1.04,

which allows for interest at 18% per annum.

The district judge provided no explanation for the award. District courts are encouraged to provide reasons to accompany awards of prejudgment interest to assist appellate review. *See Whitfield v. Lindemann,* 853 F.2d 1298, 1306–07 (5th Cir.1988), *cert. denied sub nom. Klepak v. Dole,* — U.S. ——, 109 S.Ct. 2428, 104 L.Ed.2d 986 (1989). If the judgment in the present case had awarded prejudgment interest of six percent this Court might assume, as Texas Commerce urges, that the district judge calculated the award under article 5069—1.03. In the absence of an explanation it is impossible to discern whether the district judge attempted to award equitable or statutory prejudgment interest, and if the latter, whether the correct statute was applied and the correct calculation performed. In its present state the award simply cannot be reviewed. The award must therefore be reversed and the cause remanded to permit the district judge to award prejudgment interest anew and provide reasons for the award he makes.

### Attorney's Fees

■■■■ The Capital note permitted Texas Commerce to recover reasonable attorney's fees in the event it was forced to enforce or defend the note. A reasonable attorney's fee was stipulated in the note to be 10% of the unpaid balance. Texas Commerce requested fees of $140,570.74, which was approximately 9.7% of the outstanding principal balance. The district judge awarded Texas Commerce $62,846 in attorney's fees against Capital.

Texas Commerce argues that under Texas law the stipulated attorney's fees were prima facie valid and that Capital failed to plead, and therefore waived, the affirmative defense of unreasonableness. Texas Commerce also argues that it declined to claim the fees to which it was entitled under the note and instead requested the amount of fees actually incurred. It believes the requested fees were reasonable and asserts that the district judge abused his discretion in paring down the award.

It is unnecessary to discuss the prima facie validity of the stipulated attorney's fees of 10%, because Texas Commerce elected to pursue an award for fees actually expended. Accordingly, we limit our review to the reasonableness of the award. An award of attorney's fees is entrusted to the sound discretion of the trial court. *Schwarz v. Folloder,* 767 F.2d 125, 127 (5th Cir.1985). In diversity cases state law governs the award of attorney's fees. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,* 894 F.2d 1482, 1487 (5th Cir. 1990). Texas law permits awards of attorney's fees in contract actions. Tex.Civ. Prac. & Rem.Code Ann. § 38.001(8) (Vernon 1986). The claimed fees must be reasonable under the particular circumstances of the case and must have some reasonable relationship to the amount in controversy or to the complexity of the issue to be determined. *Jerry Parks Equipment Co. v. Southeast Equipment Co.,* 817 F.2d 340, 344 (5th Cir.1987); *Giles v. Cardenas,* 697 S.W.2d 422, 429 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.).

We recognize that this case presented certain complexities which required the retention of two law firms, numerous telephone conferences, telexes, express mailings, and strategy meetings. But in the end $140,570.74 is a large fee for a note collection suit that, from original complaint to judgment, endured for little more than a year. We therefore find no abuse of discretion in the attorney's fees award.

### The Capital Note

■■■■ Capital brought a counterclaim against Texas Commerce urging estoppel and set off. Capital contended that Texas Commerce had acted improperly in dealing with the collateral in its possession, i.e., the FIserve note. The district court ruled that Capital was not entitled to set off.

Capital first argues that Texas Commerce never requested summary judgment on Capital's counterclaim, and that the district judge should not have addressed the issue *sua sponte* before Capital had an opportunity to conduct further discovery. *See John Deere Co. v. American Nat'l*

*Bank,* 809 F.2d 1190 (5th Cir.1987); *Sharlitt v. Gorinstein,* 535 F.2d 282 (5th Cir. 1976). The cases Capital relies upon do not give relief under the circumstances of this case. In *John Deere* this Court reversed a summary judgment on the ground that the district judge had based his decision on a theory not raised by the moving party and did not give the losing party an opportunity to respond. 809 F.2d at 1191–92. Similarly, in *Sharlitt* the district court had ruled on the defendants' counterclaim *sua sponte* several weeks after ruling on the defendants' motion for summary judgment. The motion did not address the defendants' counterclaim. This Court held that it would not permit such a disposition in the absence of a motion, notice, and an opportunity to develop a defense. 535 F.2d at 283.

In its response to Texas Commerce's Motion for Summary Judgment Capital argued expressly that summary judgment should not be rendered because its affirmative defenses would defeat Texas Commerce's right to recovery. Capital presented the affidavit of its president to support its response. Attached to the affidavit were several letters and documents which passed among FIserve, Capital, and Texas Commerce. These letters and documents were offered in support of the affiant's assertion that Texas Commerce had failed timely to accelerate the FIserve note. In its reply to Capital's response, Texas Commerce specifically disputed Capital's estoppel and set off claims. After a hearing on the motion, both Capital and Texas Commerce submitted further memoranda on the issues of estoppel and set off.

In short, Capital's affirmative defenses were thoroughly briefed and argued. The district court clearly did not dispose of the defenses *sua sponte.*

Capital next argues that under the Texas UCC a secured party must use reasonable care in preserving the collateral in its possession. *See* Tex.Bus. & Com.Code Ann. § 9.207 (Vernon Supp.1990). Capital cites several Texas cases holding that a pledgee of commercial paper has a duty to exercise diligence in collecting on the paper. Capi-

tal also argues that it did not have the authority itself to accelerate the FIserve note, and that a fact issue therefore exists as to whether Texas Commerce exercised reasonable care in preserving the note.

Capital specifically disputes the district judge's conclusion that acceleration of the note would not have preserved the collateral for Capital's benefit. As noted above, the purchase and sale agreement, incorporated into the FIserve note, stated that if Capital Bank & Trust's successor terminated the data processing agreement "prior to the maturity date" of the FIserve note, that note would become void. Capital believes that if Texas Commerce had accelerated the FIserve note, the "maturity date" described in the purchase and sale agreement would have been accelerated and the FDIC's subsequent termination of the agreement would have occurred too late to void the note.

The disposition of this point turns on the meaning of the words "maturity date." The FIserve note bears a "due and payable" date of October 27, 1990, and under one construction this date constitutes the "maturity date" described in the purchase and sale agreement. Alternatively, the "maturity date" may be the date on which a holder declares the entire balance of the note due. Capital urges the second construction.

Capital's construction is not supported by a plain reading of the FIserve note. Under the note, the principal balance was due three years from the date the note was executed. Interest was payable in installments at the end of each month. The acceleration provision on which Capital relies states:

> Upon default in payment of *any installment* of the indebtedness represented by this Note, the holder of this Note shall give written notice by certified mail to the undersigned.... In the event that a default is not cured within thirty (30) days from the date of actual receipt by the undersigned of the written notice of default, holder may, at its option, cause all *unpaid installments* to become at once due and exigible.

This provision clearly permits the holder to accelerate only unpaid interest installments, not the entire balance of the note. Accordingly, this provision does not give a holder the authority to accelerate "the maturity" of the note, regardless of the construction of "maturity date" adopted.

In addition, a reasonable construction of the FIserve note, purchase and sale agreement, and data processing agreement indicates that October 27, 1990 is the maturity date of the note. Under the purchase and sale agreement Capital Bank & Trust undertook to purchase data processing services from FIserve for a three-year period, and FIserve undertook a three-year obligation to pay Capbanc. If Capital Bank & Trust discontinued purchasing services from FIserve during the three years covered by the purchase and sale agreement and the note, FIserve would no longer have to pay Capbanc on the note. The transactions are therefore clearly coordinated by coextensive three-year terms. Capital's construction of the words "maturity date" would awkwardly impose a continuing obligation on FIserve to pay on the note even after Capital Bank & Trust had terminated the data processing agreement, provided the holder accelerated payment before the termination.

Accordingly, the FDIC's termination of the data processing agreement would have voided the FIserve note at any time prior to October 27, 1990. The district court therefore properly concluded that the collateral would not have been preserved notwithstanding Texas Commerce's failure to act.

The portion of the judgment awarding prejudgment interest is REVERSED and REMANDED. The remainder of the judgment is AFFIRMED.