# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 23, 2021

Lyle W. Cayce
Clerk

No. 20-50271

Transverse, L.L.C.,

*Plaintiff—Appellee Cross-Appellant*,

*versus*

Iowa Wireless Services, L.L.C., *doing business as* i wireless,

*Defendant—Appellant Cross-Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC 1:10-CV-517

Before Higginbotham, Smith, and Dennis, *Circuit Judges*.
Patrick E. Higginbotham, *Circuit Judge*:

In these cross appeals we address whether either party to this long-running contract dispute is entitled to attorneys' fees. Iowa Wireless Services, LLC (IWS) contends that it is entitled to a fee award under the Texas Theft and Liability Act and that the district court ignored our prior decision when it concluded otherwise. IWS also contends that the district court erred by awarding fees to Transverse, LLC on its claim for breach of the parties' Supply Contract. Transverse disagrees on both issues and contends that it is entitled to an additional fee award for prevailing on its

No. 20-50271

claim for breach of the parties' Non-Disclosure Agreement. We reverse in part and remand.

## I.

This case has come before us on two previous occasions. In *Transverse I*, we heard cross appeals from jury and bench trials that resulted in an $11.7 million award to Transverse on its breach-of-contract claim against IWS.[1] IWS, a wireless telephone service provider, had hired Transverse to develop custom billing software called "blee(p)." The parties' relationship was formalized in a Supply Contract and a Mutual Non-Disclosure Agreement (NDA). When IWS realized that Transverse could not deliver the custom billing software on schedule, it sought the services of a competitor and terminated the Supply Contract.[2] Transverse then sued IWS under the Supply Contract, the NDA, the Texas Theft Liability Act (TTLA), and tort theories of conversion and misappropriation.[3] IWS counterclaimed for breach of the Supply Contract. The parties tried the Supply-Contract claims to a jury and submitted the remainder to a bench trial based on a jury-waiver provision in the NDA.[4] After these proceedings, the district court rendered judgment for Transverse on its claim that IWS's termination had breached the Supply Contract. But the district court held that IWS had not breached the NDA and was not liable to Transverse in tort. Both parties appealed.

---

[1] *Transverse, L.L.C. v. Iowa Wireless Servs., L.L.C. ("Transverse I")*, 617 F. App'x 272 (5th Cir. 2015).

[2] *Transverse I*, 617 F. App'x at 274.

[3] *Id.* at 273.

[4] *Id.* at 274.

No. 20-50271

We affirmed that IWS's termination breached the Supply Contract but reversed the district court on the NDA claim, holding that IWS had breached that agreement by sharing meeting notes containing Transverse's confidential information with a competitor.[5] We remanded for consideration of "the proper amount and type of damages that Transverse may collect on its breach-by-termination claim; the amount of damages, if any, that Transverse may collect for IWS's breach of the NDA; and whether IWS is liable under any of the tort theories pressed by Transverse."[6] On remand, the district court awarded Transverse $1,700,000 in reliance damages on its Supply-Contract claim. But the district court ordered Transverse to "take nothing" on its claims for breach of the NDA, violation of the TTLA, conversion, and misappropriation of trade secrets. Both parties again cross-appealed.

In *Transverse II*, we affirmed the district court's award of reliance damages to Transverse on the Supply-Contract claim and the take-nothing judgment on the NDA claim.[7] We also affirmed that Transverse had failed to establish its tort claims against IWS.[8] But we determined that IWS was, in fact, the prevailing party on the TTLA claim.[9] Thus, we vacated Transverse's take-nothing judgment on the TTLA claim and remanded the

---

[5] *Id.* at 282.

[6] *Id.*

[7] *Transverse, L.L.C. v. Iowa Wireless Servs., L.L.C. ("Transverse II")*, 753 F. App'x 184, 188–89 (5th Cir. 2018).

[8] *Id.* at 190.

[9] *Id.* at 190-91.

case for further consideration because "IWS is entitled to a mandatory award of costs and attorney's fees on this claim."[10]

After the second remand, the district court referred the parties' motions for attorneys' fees to the magistrate judge. Based on the operative pleading, the only viable basis Transverse asserted for recovering fees was Texas Civil Practice & Remedies Code § 38.001. Fearing that the operative pleading would be inadequate if Iowa law applied, Transverse requested leave to amend its complaint "to make clear that its attorneys' fee claim includes a claim for attorney's fees under" the NDA and Supply Contract as well. The magistrate judge recommended denying leave to amend, noting that an amendment "would delay the Court's consideration of the [fee] issue now before it, and unduly prejudice IWS." The magistrate judge elaborated that, "while perhaps not 'futile,' the amendment is not necessary, as Texas, and not Iowa law is applicable."

The magistrate judge then addressed whether Transverse was entitled to fees on the NDA and Supply-Contract claims. He rejected Transverse's contention that it had prevailed on the NDA claim because "Transverse was not awarded damages on its breach, and damages are an essential element of a contract claim under Texas law." Thus, he recommended denying Transverse fees on the NDA claim. On the Supply-Contract claim, the magistrate judge first determined that Texas law was controlling under the law of the case, citing a previous statement to that effect by the district court. In so holding, he rejected IWS's argument that Iowa law controlled based on the Supply Contract's Iowa choice of law provision. Because Transverse had prevailed on its Supply Contract claim, the magistrate judge recommended an award of $2,001,442 in attorney's fees.

---

[10] *Id.* at 191.

No. 20-50271

Next, the magistrate addressed IWS's motion for fees on the TTLA claim. IWS sought fees totaling $2,563,009, which was "approximately 50% of all fees it incurred in this case." IWS represented that it had removed (1) "any fees relating to Transverse's claim for breach of contract based on early termination," (2) "fees related solely to discrete elements of Transverse's 'disclosure' claims," and (3) "fees that would not have been incurred on the TTLA claim alone." But IWS contended that "all other claims in the case are 'inextricably intertwined' with the TTLA claim," and thus it could not further segregate the remaining fees. The magistrate judge observed that the *Transverse II* mandate limited IWS to an "award [of] attorneys' fees only for the TTLA claim." He found that IWS failed to show that the fees attributable to the TTLA claim could not be segregated from the non-recoverable claims and, consequently, IWS was requesting fees for claims on which it was not entitled to recover. The magistrate judge recommended denying IWS's motion for fees without prejudice and directing IWS "to submit documentation to the Court supporting its claim for attorneys' fees for the TTLA claim only." The district court adopted the magistrate's report and recommendations.

IWS filed an amended fee application with an affidavit and a series of supporting exhibits, requesting the same $2,563,009 in fees. IWS contended that the magistrate had applied an overly stringent segregation standard at odds with Texas law, by requiring IWS to isolate work performed solely on the TTLA claims. Counsel for IWS explained that to calculate recoverable fees, she had:

> reviewed each of the invoices that IWS paid for legal services and determined which services would have been necessary to defend the TTLA claim only, i.e., "even if" Transverse had not brought the related "disclosure" claims that arise from the same set of underlying facts . . . . excluded all time and entries for work related solely to Transverse's claim for breach of

5

No. 20-50271

> contract based on early termination . . . . excluded all time and entries for work related solely to other, non-TTLA disclosure claims . . . . [but] did not exclude services provided to defend the TTLA claim that also furthered IWS's defense of related claims based on the same underlying facts[.]

Transverse opposed the amended application, and the district court again referred IWS's motion.

The magistrate judge characterized IWS's amended application as "defiant," because it sought the exact same fee award as the original. Citing Transverse's opposition, the magistrate gave several examples of IWS's allegedly improper fees, including:

> (1) over $360,000 in fees that were incurred before IWS admitted the disclosure that led to Transverse's claim; (2) $60,000 in fees for the deposition of Kleavin Howatt, who offered no testimony about any disclosure claims; (3) fees relating to the analysis of Transverse's entire document production, when the disclosure claim production totaled about 240 pages, while the (unrecoverable) contract claim production totaled approximately 3,000,000 million pages; (4) fees for an Iowa suit filed in federal court by IWS that was purely a breach of contract case; (5) 22 of IWS's 628 exhibits relate to the disclosure claims, yet IWS seeks 50% of its total fees for just the disclosure claims; and (6) . . . fees for review of Transverse's damage expert reports that had placeholders for later discussion of the disclosure claims.

The magistrate judge rejected IWS's renewed argument for a less stringent fee-segregation standard, explaining that "intertwined facts do not make fees recoverable. Instead, the focus is whether the legal work performed

No. 20-50271

pertains solely to claims for which attorney's fees are unrecoverable."[11] Holding that the district court has discretion to deny fees where the applicant fails to adequately segregate, he recommended denial here because IWS "affirmatively refused to try to carry" its burden to segregate. After de novo review, the district court adopted the recommendations and rejected IWS's fee application in part, awarding only costs in the amount of $32,903.58 for the TTLA claim. For a third time, both parties cross-appealed.

## II.

"An award of attorney's fees is entrusted to the sound discretion of the trial court."[12] Where a district court awards fees, our review is for abuse of discretion.[13] But "[t]he availability of attorneys' fees—as opposed to the amount awarded—is a question of law that we review *de novo*."[14] "We review *de novo* a district court's compliance with our mandate."[15]

### A. IWS's Fees Under the Texas Theft Liability Act

We begin with IWS's entitlement to fees under the TTLA. In *Transverse II*, we held that "IWS is the prevailing party" on the TTLA claim "and is entitled to a mandatory award of attorney's fees and costs."[16] On

---

[11] *Westergren v. Nat'l Prop. Holdings, L.P.*, 409 S.W. 3d 110, 137 (Tex. App.—Houston [14th Dist.] 2013) *aff'd in part, rev'd in part*, 453 S.W.3d 419 (Tex. 2015)) (cleaned up).

[12] *Tex. Com. Bank Nat. Ass'n v. Cap. Bancshares, Inc.*, 907 F.2d 1571, 1575 (5th Cir. 1990).

[13] *ATOM Instrument Corp. v. Petroleum Analyzer Co., L.P.*, 969 F.3d 210, 216–17 (5th Cir. 2020), *as revised* (Sept. 17, 2020).

[14] *GIC Servs., L.L.C. v. Freightplus USA, Inc.*, 866 F.3d 649, 665 (5th Cir. 2017).

[15] *In re Deepwater Horizon*, 928 F.3d 394, 398 (5th Cir. 2019) (internal quotations omitted).

[16] *Transverse II*, 753 F. App'x at 191.

remand, the district court concluded that IWS had not shown that fee segregation was "impossible," so IWS needed to segregate its TTLA-related fees from those related to all other claims, including the NDA claim, Transverse's failed claim for breach based on "access to Service," and the claims for conversion and misappropriation of trade secrets. IWS concedes that it needed to segregate certain fees, but it argues that the district court used an overly demanding standard to assess its segregation efforts and contravened this Court's mandate by awarding IWS no fees on the TTLA claim. We agree.

"In diversity cases state law governs the award of attorney's fees."[17] Texas follows the American Rule, under which a court may not award fees "unless authorized by statute or contract."[18] The TTLA provides this authorization, stating that a court "shall" award fees to "each person who prevails in a suit under this chapter."[19] This includes those, like IWS, who successfully *defend* against a TTLA claim.[20]

Where fees are authorized, "fee claimants have always been required to segregate fees between claims for which they are recoverable and claims for which they are not."[21] The party seeking fees bears the burden of properly segregating them.[22] An exception to the fee-segregation requirement exists "when the fees are based on claims arising out of the same transaction that

---

[17] *Tex. Com. Bank Nat. Ass'n*, 907 F.2d at 1575.

[18] *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006).

[19] Tex. Civ. Prac. & Rem. Code Ann. § 134.005(b).

[20] *See Transverse II*, 753 F. App'x at 190-91 (citing *Spear Mktg., Inc. v. BancorpSouth Bank*, 844 F.3d 464, 470 n.6 (5th Cir. 2016)).

[21] *In re Alonzo*, 540 F. App'x 370, 373 (5th Cir. 2013) (internal quotations omitted).

[22] *Merritt Hawkins & Assocs., L.L.C. v. Gresham*, 861 F.3d 143, 156 (5th Cir. 2017).

No. 20-50271

are so intertwined and inseparable as to make segregation impossible."[23] But the exception requires more than a "common set of underlying facts[;]" "it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated."[24] Whether claims are so intertwined is a "mixed question of law and fact."[25]

IWS contends that Transverse's "disclosure claims"—breach by "access to the service," breach of the NDA, misappropriation of trade secrets, and conversion—are "intertwined with the fees incurred in defense of the TTLA claim." Each of these claims was premised on IWS's alleged disclosure of meeting notes and a document containing the parties' "user-acceptance-test" criteria for the custom billing system to Transverse's competitor.[26] Transverse contends that the "disclosure" claims are not inseparable because they require proof of different elements.

Texas provides no general rule for determining when claims are sufficiently intertwined to come within the exception. But the Texas Supreme Court has deemed the exception applicable where, for instance, a plaintiff in a breach-of-contract case must overcome related counterclaims in order to recover on that claim.[27] Here, certain disclosure claims have an analogously close legal relationship to the TTLA claim. Although the abstract claim elements are different, the district court believed that each disclosure claim was subject to the same proof, given that all turned on the

---

[23] *Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017).

[24] *Tony Gullo Motors*, 212 S.W.3d at 313; *Kinsel*, 526 S.W.3d at 427.

[25] *Tony Gullo Motors*, 212 S.W.3d at 313.

[26] *Transverse I*, 617 F. App'x at 274, 280-82.

[27] *Varner v. Cardenas*, 218 S.W.3d 68, 69 (Tex. 2007) (per curiam).

legal significance of IWS's alleged disclosure of meeting notes to Transverse's competitor. In its post-trial findings of fact and conclusions of law, the district court observed that "Transverse's theft-of-trade-secret claim rests on the same evidence and seeks the same damages as Transverse's misappropriation-of-trade-secrets and conversion claims that the court has found subsumed in Transverse's claim for breach of the NDA." The district court then concluded that Transverse's TTLA claim must fail "for the same reasons Transverse's misappropriation of trade secrets and conversion claims fail."

When this Court remanded after *Transverse I*, the district court repeated verbatim its explanation of how the disclosure claims were functionally identical to the TTLA claim.[28] This view of the interrelatedness of the claims was even shared by counsel for Transverse, at least earlier in the case.[29]

Our earlier decisions in this dispute prompt us to stop short of finding that *all* the disclosure claims are inextricably intertwined with the TTLA claim. In *Transverse I*, we resolved the "access to Service" breach claim, based solely on the language of the Supply Contract, indicating that this claim is not inextricably intertwined with the other disclosure claims, which are

---

[28] *Transverse, LLC v. Iowa Wireless Serv., LLC*, No. A-10-CV-517-LY, 2016 WL 11586869, at *5 (W.D. Tex. Sept. 21, 2016) ("Transverse's theft-of-trade-secret claim rests on the same evidence and seeks the same damages as Transverse's misappropriation-of-trade-secrets and conversion claims that the court has found subsumed in Transverse's claim for breach of the NDA. Therefore, for the same reasons Transverse's misappropriation-of-trade-secrets and conversion claims fail, Transverse's theft-of-trade-secrets claim also fails.").

[29] In a 2013 communication, counsel for Transverse wrote to counsel for IWS stating: "The 'giving a competitor access' breach of Contract claim involved the same issues, facts, arguments, and work that the NOA, trade secret misappropriation, Theft Liability Act, and conversion claims involved."

more closely related to the NDA.[30] But in *Transverse II*, we agreed with the district court "that Transverse's misappropriation of trade secrets, conversion, and Texas Theft Liability Act claims fail" all because "IWS's disclosure resulted in no lost value to Transverse."[31] This was also the basis on which we affirmed the district court's take-nothing judgment on the NDA claim.[32] Thus, this Court upheld the district court's view that the resolution of these nominally distinct claims tended to collapse into one analysis under the circumstances of this case. Apart from the breach-by-access claim under the Supply Contract, our reasoning in *Transverse II* supports IWS's argument that the TTLA claim was inextricably intertwined with the remaining disclosure claims.

Regardless of the necessary degree of fee segregation, the district court erred when it concluded that it had discretion to deny completely IWS's application for fees on the TTLA claim. Although a district court typically has discretion to award attorney's fees, the TTLA states that the court "shall" award fees to a person prevailing under it.[33] Based on the plain statutory language, "[a]n award of attorney fees is mandatory when the statutory requirements under the TTLA are met."[34] In *Transverse II*, this Court held that IWS qualified as a prevailing person under the TTLA and was entitled to a mandatory fee award.[35] This holding met the TTLA's

---

[30] *Transverse I*, 617 F. App'x at 277–78.

[31] *Transverse II*, 753 F. App'x at 190.

[32] *Id.* at 189 ("[T]he district court correctly determined that Transverse failed to establish any lost value to blee(p) based on IWS's disclosure of the User Acceptance Test document and meeting notes.").

[33] Tex. Civ. Prac. & Rem. Code § 134.005(b).

[34] *Raytheon Co. v. Indigo Sys. Corp.*, 895 F.3d 1333, 1344–45 (Fed. Cir. 2018).

[35] *Transverse II*, 753 F. App'x at 190-91.

requirements and became law of the case, which the district court was not at liberty to revisit.[36]

Although the district court retained its traditional discretion to determine the appropriate amount of fees, its discretion did not extend to denying IWS fees entirely. This follows from the decisions of this Court, the Texas Supreme Court, and numerous lower Texas courts concluding that a "failure to segregate attorneys [*sic*] fees does not preclude an attorneys-fees recovery."[37] Where a fee applicant has failed to segregate its fees properly, it is appropriate to "remand to the trial court for reconsideration of the attorneys-fees award."[38] Further, it is incorrect to say that "IWS has not submitted evidence as to the proper award of fees as to the discrete TTLA claim." Even where the fee applicant fails to adequately segregate, "[u]nsegregated attorney's fees for the entire case are some evidence of what the segregated amount should be."[39] In addition to halving its total case fees,

---

[36] "The mandate rule is a subspecies of the law-of-the-case doctrine: . . . . It [] operates on a vertical plane—constricting a lower court vis-à-vis a higher court. The vertical variant is what we call the 'mandate rule,' and it's the kind at issue here." *In re Deepwater Horizon*, 928 F.3d at 398 (internal citations omitted).

[37] *Kinsel*, 526 S.W.3d at 428 (citing *Tony Gullo Motors*, 212 S.W.3d at 314); *see also Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 298 (5th Cir. 2007) ("But the failure to segregate does not mean that a party cannot recover any of its attorney's fees."); *Rappaport v. State Farm Lloyds*, 275 F.3d 1079 (5th Cir. 2001) ("[I]f a party does not properly segregate attorney's fees, it would be error to completely deny attorney's fees on contract claims, as evidence of unsegregated attorney's fees is more than a scintilla of evidence of segregated fees."); *Jacks v. G.A. Bobo*, No. 12-10-00163-CV, 2011 WL 2638751, at *4 (Tex. App.–Tyler June 30, 2011, no pet.) ("A failure to segregate attorney's fees does not mean that the claimant cannot recover any attorney's fees.") (citing *Tony Gullo Motors*, 212 S.W.3d at 314); *7979 Airport Garage L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488, 510 (Tex. App.–Houston [14th Dist.] 2007, pet. denied) (same).

[38] *Kinsel*, 526 S.W.3d at 428.

[39] *Navigant Consulting, Inc.*, 508 F.3d at 298 (quoting *Tony Gullo Motors*, 212 S.W.3d at 314).

No. 20-50271

IWS submitted an affidavit and several exhibits affording the district court adequate bases for making a fee award. Because IWS is entitled to some fee award on the TTLA claim, we remand for a determination of the proper amount.

We do not hold that IWS is entitled to the full fee amount requested in its latest two petitions. Within the principles set forth here, we entrust to the district court the task of looking at the fee application anew. But we clarify that the mandate of *Transverse II* did not depart from Texas law governing fee segregation, and fees incurred defending the TTLA claim do not become unrecoverable simply because they may have furthered another non-recoverable claim as well.[40] IWS "did not have to keep separate time records" by claim, and Texas's standard for fee segregation "does not require more precise proof for attorney's fees than for any other claims or expenses."[41] To the extent the district court is inclined to reduce fees on work that did "double duty," it can simply "allocat[e] as a percentage of total fees the amount that likely would have been incurred even if the unrecoverable claims were not in the case," "instead of requiring burdensome retrospective itemizations by claim."[42]

## B. Transverse's Fees Under the Supply Contract

IWS contends the district court erred by relying on Texas law, specifically Texas Civil Practice & Remedies Code § 38.001, to award

---

[40] *Tony Gullo Motors*, 212 S.W.3d at 313 ("To the extent such services would have been incurred on a recoverable claim alone, they are not disallowed simply because they do double service.").

[41] *Id.* at 314.

[42] *Bear Ranch, LLC v. Heartbrand Beef, Inc.*, No. 6:12-CV-14, 2016 WL 1588312, at *4 (S.D. Tex. Apr. 20, 2016) (Costa, J. sitting by designation).

Transverse fees for the Supply Contract claim because the Supply Contract is governed by Iowa law, and Iowa law does not allow for fee recovery under the facts of this case. Alternatively, IWS contends that § 38.001 does not permit an award of fees against an unincorporated business entity, like an LLC. We leave for another day the question of § 38.001's application to unincorporated business entities. For purposes of this appeal, it suffices to say that the district should have applied Iowa, not Texas, law when assessing whether Transverse is entitled to fees under the Supply Contract, in view of that agreement's unambiguous Iowa choice-of-law provision.

Transverse argues that we ought not reach the choice-of-law question because IWS has waived its argument by failing to effectively raise it in one of the prior appeals and because the law-of-the-case doctrine prevents us from revisiting the district court's determination that Texas law applies. Transverse is incorrect that the law of the case affects the viability of IWS's choice-of-law argument on appeal. Neither *Transverse I* nor *Transverse II* determined whether or not the Supply Contract was governed by Iowa law.[43] Absent such a determination, there is no law of the case controlling this

---

[43] *Transverse II*, 753 F. App'x at 187 n.2 ("IWS again does not articulate or even identify a conflict between Texas or Iowa law, so our choice-of-law analysis necessarily stops. Accordingly, we will not reach this issue."); *Transverse I*, 617 F. App'x at 275 n.3 ("It is not entirely clear whether Texas or Iowa contract law governs the dispute, but the parties agree that the laws of the two states are essentially identical. Both parties cite cases from both states, as do we.").

panel.[44] The district court may decline to revisit its prior rulings, but those rulings do not bind this Court.[45]

This leaves the matter of waiver. Assuming arguendo, that IWS failed to raise the choice-of-law issue adequately in the prior appeals, we may address it now under the plain error standard.[46] Under plain-error review, IWS "must show (1) an error; (2) that is plain or obvious; (3) that affects his substantial rights."[47] Because this is a diversity case, we apply Texas's choice-of-law principles.[48]

The argument for Iowa law is based on § 25.7 of the Supply Contract, which states unambiguously that "[t]his Contract shall be governed and construed by the laws of the State of Iowa." Texas honors such contractual choice-of-law clauses, provided "the law chosen by the parties (1) has a reasonable relationship to the parties and the chosen state and (2) is not

---

[44] *K.P. v. LeBlanc*, 729 F.3d 427, 436 (5th Cir. 2013) ("The rule of the law of the case is a rule of practice . . . . [which] provides that an issue of law or fact *decided on appeal* may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal.") (internal quotations omitted) (emphasis original).

[45] The law of the case "operates on a horizonal plane—constricting a later panel vis-à-vis an earlier panel of the same court. It also operates on a vertical plane—constricting a lower court vis-à-vis a higher court." *In re Deepwater Horizon*, 928 F.3d at 398 (internal citation omitted).

[46] *See Crawford v. Falcon Drilling Co.*, 131 F.3d 1120, 1123 (5th Cir. 1997) ("[O]ur Court has adopted the practice of reviewing unpreserved error in a civil case using the plain-error standard of review."); *see also Med. Ctr. Pharmacy v. Holder*, 634 F.3d 830, 836 (5th Cir. 2011) ("Only plain error justifies departure from the waiver doctrine.") (internal quotations omitted).

[47] *Quinn v. Guerrero*, 863 F.3d 353, 358 (5th Cir. 2017).

[48] *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 770 (5th Cir. 2016) ("A federal court sitting in diversity applies the forum state's choice-of-law rules to determine which substantive law will apply.").

No. 20-50271

contrary to a fundamental policy of the state."[49] IWS's headquarters in Iowa provide the requisite reasonable relationship, and no fundamental policy of Texas is contravened when the law of a reasonably-related state is used to assess attorneys' fees.[50]

Transverse argues that another section of the Supply Contract, § 19.6, allows for application of Texas law or at least makes the import of § 25.7 ambiguous. Section 19.6 concerns the parties' agreement to submit to mediation before commencing litigation and the venue for that mediation; it specifies that mediation will occur "within the county of Travis, by or recommended by, Austin Dispute Resolution Center, according to its mediation rules, and any ensuing litigation shall be conducted within said county, according to Texas law." This last clause is the basis for Transverse's argument that the Supply Contract is actually governed by Texas law. But reading this provision in the manner that Transverse advocates would nullify the separate choice-of-law provision in § 25.7, which is contrary to the manner in which Texas courts interpret a contract.[51] Transverse attempts to resolve the contradiction by interpreting § 25.7 to provide the law governing only non-contractual disputes such as "personal injury, defamation, and other [cases] unrelated" to "the meaning, performance, or enforcement of [the] Contract." This is a plainly unreasonable interpretation of § 25.7, which states that the *"Contract"* will be governed by Iowa law. By contrast, IWS's interpretation—that the Texas

---

[49] *Provident Fin. Inc. v. Strategic Energy L.L.C.*, 404 F. App'x 835, 839 (5th Cir. 2010).

[50] *Id.*

[51] Under Texas law, courts "consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 889 (Tex. 2019).

No. 20-50271

law clause refers to Texas procedural law and choice of law principles—is not unreasonable and it avoids creating surplusage.[52]

Thus, it is clear that the district court should have applied Iowa law to assess the breach of the Supply Contract and any entitlement to attorneys' fees under that agreement. On the question of breach, the failure to do so was likely harmless because both states require proof of the same claim elements, but on the question of fees, it was outcome-determinative. Iowa, like Texas, requires that any fee award be authorized by either statute or contract. But unlike Texas, Iowa does not have a statute authorizing a fee award in breach-of-contract cases. Because the Supply Contract itself does not authorize attorneys' fees, under Iowa law, the district court lacked a basis on which to award Transverse attorney's fees for IWS's breach of this agreement. IWS has made the showing necessary to prevail under plain-error review, and we reverse the fee award to Transverse on the Supply-Contract claim.

## C. Transverse's Fees Under the Non-Disclosure Agreement

Finally, Transverse contends that the district court erred by failing to recognize it as the prevailing party on the NDA claim and refusing to award Transverse the related fees. Unlike the Supply Contract, the NDA includes a provision expressly authorizing an award of attorney's fees to the "substantially prevailing party." Transverse did not invoke this provision in its pleadings and now seeks leave to amend to do so. We need not address this request because such an amendment would be futile; Transverse did not prevail, substantially or otherwise, on its NDA claim. Finding no error, we affirm.

---

[52] "If we determine that only one party's interpretation of the insurance policy is reasonable, then the policy is unambiguous and the reasonable interpretation should be adopted." *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 258 (Tex. 2017).

In *Transverse I*, we held that "the district court should have awarded judgment to Transverse on Transverse's claim that IWS breached the NDA."[53] Nonetheless, on remand, the district court determined that Transverse should "TAKE NOTHING on its claims against Iowa Wireless Services . . . for breach of the NDA." In *Transverse II*, we "affirm[ed] the district court's take-nothing judgment for Transverse."[54] Based on its earlier take-nothing judgment, the district court determined that Transverse was not entitled to fees on the NDA claim.

Transverse contends that damages are not a prerequisite to prevailing party status because the *Transverse I* ruling "provided actual relief to Transverse . . . by resolving in Transverse's favor several major disputed issues . . . [and] materially alter[ing] the legal relationships between the parties." "Whether a party prevails turns on whether the party prevails upon the court to award it something, either monetary or equitable."[55] A finding that one party violated a contract, without more, will not suffice.[56] Although Transverse contends that the *Transverse I* holding provided "an enforceable judgment that materially alters the legal relationships between the parties," it identifies no equitable relief awarded in the district court's actual judgment. This is unsurprising given that Transverse requested no specific equitable or declaratory relief in its operative pleadings.

Transverse cites several cases for the proposition that a judgment materially altering the legal relationship between the parties confers

---

[53] *Transverse I*, 617 F. App'x at 282.

[54] *Transverse II*, 753 F. App'x at 189.

[55] *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 655 (Tex. 2009).

[56] *Id.*

prevailing party status, but these cases are inapposite because they concern claims under a variety of federal laws—§ 1983, the Clean Water Act, the Fair Housing Amendments Act, and the Americans with Disabilities Act—not a claim for breach of contract under Texas law.[57] Under Texas law, "[n]either law nor logic favors a rule that bestows 'prevailing party' status" on a party that receives only a take-nothing judgment, as Transverse has.[58] And in the absence of equitable relief, "[a] zero on damages necessarily zeros out 'prevailing party' status," a fact unaffected by this Court's earlier holding that IWS breached the NDA.[59]

This conclusion is not altered by the NDA's language allowing for an award of attorneys' fees to a "substantially prevailing party." This Court has explained that this phrase still "retains the need to prevail" and held that a plaintiff does not prevail in any meaningful sense where it obtains "no court-ordered relief modifying the [defendant's] behavior."[60] Texas courts are in accord. Even in cases where a plaintiff need only "substantially prevail," Texas courts hew to the reasoning of *KB Homes*, which requires a plaintiff to obtain actual relief in the form of damages or equitable relief before fees can be awarded.[61] Where all of a plaintiff's "requested relief was either expressly

---

[57] *See Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001); *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992); *Env't Conservation Org. v. City of Dallas*, 307 F. App'x 781, 783 (5th Cir. 2008).

[58] *KB Home*, 295 S.W.3d at 656.

[59] *Merritt Hawkins & Assocs.*, 861 F.3d at 156 (quoting *KB Home*, 295 S.W.3d at 655–56) (Plaintiff was not the prevailing party where the court found breach but awarded no damages or equitable relief.).

[60] *Env't Conservation Org.*, 307 F. App'x at 784.

[61] *Nehls v. Hartman Newspapers, LP*, 522 S.W.3d 23, 31 (Tex. App. 2017) (applying the "'prevailing party' test articulated in *KB Home*" "when deciding whether a party has 'substantially prevailed'").

or impliedly denied" the plaintiff has not "substantially" prevailed in the eyes of Texas courts.[62] Thus, to the extent the word "substantially" modifies the standard for prevailing, it does not obviate the need to obtain some relief. Consequently, the district court did not err in denying Transverse fees on the NDA claim because Transverse's failure to obtain any cognizable relief on that claim prevents it from attaining prevailing-party status.

## III.

We reverse the district court's order denying IWS attorney's fees for the TTLA claim and remand for consideration of the proper amount. We also reverse the district court's fee award to Transverse on the Supply-Contract claim. Finally, we affirm the district court's denial of fees to Transverse for the NDA claim.

---

[62] *Dallas Morning News, Inc. v. City of Arlington*, 2011 WL 182886, at *4 (Tex. App. Jan. 21, 2011).