# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 19, 2009

Charles R. Fulbruge III
Clerk

No. 08-30037

DUCOTE JAX HOLDINGS LLC; DAVID L. DUCOTE, Trustee; STEVEN O. MEDO, JR., Trustee; POYDRAS PARTNERS

Plaintiffs-Appellees

v.

WILLIAM E. BRADLEY

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana, New Orleans
USDC No. 04-1943

Before HIGGINBOTHAM, BENAVIDES, and STEWART, Circuit Judges.

PER CURIAM:[*]

This is an appeal from a civil RICO judgment with damages awarded in the amount of $6,432,600, and $74,156.25 in attorneys' fees. We AFFIRM the judgment as to liability. Finding that the district court clearly erred in awarding damages, we REVERSE and RENDER the damages award. We AFFIRM the award of attorneys' fees.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.    BACKGROUND

On July 8, 2004, the plaintiff, Ducote Jax Holdings, L.L.C., filed a complaint alleging, inter alia, violations of the Racketeer Influenced and Corrupt Organization Act (RICO). 18 U.S.C. §§ 1961–1968. The original complaint asserted claims against Bank One, J.P. Morgan Chase, and three Bank One executives: John B. Ohle, III; Scott D. Deichmann; and Jeffrey T. Conrad. The complaint alleged that the defendants had induced the plaintiff to participate in a tax strategy that the IRS subsequently found to be fraudulent.

Plaintiff alleged that Bank One's documents and communications contained false and/or misleading representations, including representations that no interest or penalties would be assessed by the IRS. The complaint further alleged that the purportedly independent third parties that reviewed and advised the plaintiff with respect to the legitimacy of the tax strategies were solicited and paid by Bank One and were thus substantially compromised and did not fulfill their fiduciary and good faith obligations to the plaintiff. The complaint alleged that the defendants failed to advise that the tax shelter was unregistered and that hundreds of other clients were using this tax strategy. The complaint also alleged predicate acts of mail and wire fraud in connection with the RICO claim. In addition to the RICO claims, the complaint asserted claims for breach of fiduciary duty, fraud, negligent misrepresentation, breach of contract, civil conspiracy, and unfair trade practices.

With respect to the alleged injury incurred from the defendants' scheme, the RICO statement provided that the "Plaintiff has paid exorbitant fees and commissions on tax strategies for which the Defendants completely misrepresented the risk and potential return." The RICO statement further provided that "Plaintiff has suffered extensive monetary damages consisting of unexpected tax liability, fees and commissions paid to the Bank One Enterprise, as well as interest and penalties which the [IRS] will likely seek."

Subsequent to filing suit, the plaintiff became aware of Defendant-Appellant William E. Bradley's involvement with the named defendants through documents received pursuant to the IRS's investigation. Plaintiff then filed a first amended and supplemental complaint adding Bradley as a named defendant. Plaintiff subsequently filed another amended and supplemental complaint adding the following three plaintiffs: Poydras Partners, David L. Ducote (Ducote), trustee of the Ducote Class trust, and Steven O. Medo, Jr., trustee of The Chapman Charles Ducote Trust, and the Suzette A. Ducote Trust. The plaintiffs alleged that Paul Daugerdas, a partner in the Chicago office of the law firm Jenkens & Gilchrist, devised a tax strategy in which foreign exchange digital options ("FX Contracts") were purchased and sold. The purpose of the tax strategy was to create losses to lessen other tax liability. The plaintiffs alleged that Defendant John Ohle (Ohle), a Bank One executive, induced them to engage in this tax strategy by representing that the tax strategies had been vetted by Jenkens & Gilchrist. The plaintiffs further alleged that the defendants did not explain that the Jenkens & Gilchrist attorneys who drafted the favorable opinion letter regarding the tax strategy were approving its own tax strategy. The plaintiffs alleged that the amount of fees the defendants billed was not based on the time expended working on the transaction but simply on the amount of the transaction.

In 2006, the plaintiffs received $2,850,000 pursuant to a settlement agreement involving all the defendants except Bradley. With respect to Bradley, the plaintiffs alleged that he was a member of the conspiracy and that he accepted $255,000 from the monies plaintiffs paid the defendants. The plaintiffs claimed that Bradley invested some of the money back in the illegal enterprise when he wired $46,000 to Ohle and mailed a check for $184,000 to JDC Group, Inc., an unknown co-conspirator. Bradley kept the remaining $25,000.

During the proceedings below, Bradley failed to respond to the plaintiffs' request for admissions. As a result, the magistrate judge ruled that all the matters set forth in plaintiffs' request for admissions were deemed admitted. The district court affirmed that ruling.

On May 21, 2007, at the bench trial before the district court, the plaintiffs' only two witnesses were Ducote and Bradley. Ducote is a named plaintiff in the capacity of the trustee of the Ducote Class Trust. Ducote testified that Ohle approached him regarding the tax strategy at issue. Ducote knew that Ohle was with Bank One. Ducote was told that the tax strategy was "bullet-proof." Ducote was the "point person [in the family] responsible for kind of marshaling this tax strategy." During the time of the transaction Ducote was not aware that Bradley had represented to Jenkens & Gilchrist that he was working on this tax strategy. During the discovery proceedings in this case, Ducote was surprised to see an invoice for over $30,000 worth of services rendered by Bradley purporting to be for Wayne Ducote. Wayne Ducote is Ducote's father and manager of Ducote Jax Holding, L.L.C. Ducote was also surprised to discover two other invoices from Bradley purporting to be for services rendered by Bradley for Ducote and his sister Suzette Ducote.

Ducote testified that the use of the instant tax strategy resulted in millions of dollars in losses by the "various family entities." He testified that the tax assessment was approximately $3,150,000, and the penalty was approximately $315,000 (10% of the taxes), and the interest was approximately $500,000. The fees paid to Jenkens & Gilchrist and Bank One were $1,033,500. Attorneys' fees associated with the current litigation totaled $648,181.50. Ducote testified that the tax assessment had been paid to the IRS, that the accountants computed a "loss of investment" of $1,500,000, and that he had received $2,850,000 from the settlement with the other defendants. Ducote

testified that, excluding the "subjective" figure for loss of investment, his family entities had lost a little more than $3.9 million.

The plaintiffs called Bradley to testify. Bradley testified that he had a personal injury practice in Hammond, Louisiana. Bradley met Ohle at a bar review course shortly after graduating from law school in 1993. They studied for the bar together, became close friends, and would see each other periodically. Bradley remained in contact with Ohle even after Ohle moved from Louisiana to D.C., and then later to Chicago. Bradley considered Ohle to be a good friend; however, Bradley testified that they had not talked as much since the start of this litigation. Although Bradley did not have specific recollection of a conversation, he believed that Ohle contacted him and told him that an opinion would be provided and Bradley was to fax it to Jenkens & Gilchrist. Pursuant to Ohle's instructions, Bradley sent to Jenkens & Gilchrist three invoices totaling $112,500, purporting to be services he performed for matters related to David, Wayne, and Suzette Ducote. Subsequently, Jenkens & Gilchrist wired $255,000 to Bradley's bank account. Bradley believed that he called either Ohle or Paul Daugerdas regarding the $255,000, and was instructed to wire $46,000 to Ohle and write a check for $184,000 to an unknown entity called JDC. Bradley paid himself the remaining $25,000. Bradley testified he worked less than ten hours on this matter, could not find a file in his office regarding this matter, and had "numerous conversations" with Daugerdas and Ohle regarding this matter.

After Bradley testified, the defense called David Lukinovich. Lukinovich was a certified tax attorney who had performed a substantial amount of work over the past ten years for the Ducote family entities. Lukinovich set up a number of trusts for the Ducotes. Lukinovich first heard about the instant tax strategy from John Ohle, but he did not become involved in the marketing and facilitating of the strategy. Lukinovich received calls from various clients that

Ohle was meeting with them to talk about various strategies. Lukinovich met with clients and was paid money from Bank One for work related to those meetings. He estimated that he made "in the 50,000 dollar range." Although Lukinovich did not have a specific memory, he was sure he advised Ducote regarding the risks involved with the strategy because there was not an "IRS code section on it or some other type of IRS guidance." In other words, the IRS had not approved the strategy. In Lukinovich's opinion, the strategy was not fraudulent. Lukinovich had no idea that Bradley was involved.[1]

After post-trial briefing, the district court issued its findings of fact and conclusions of law. Relying on the deemed admissions and evidence from the bench trial, the district court found that Bradley is liable to the plaintiffs for violations of the civil RICO statute, 18 U.S.C. §1962(a),(c) & (d), and, under Louisiana law, breach of fiduciary duty; negligent misrepresentation; fraud; and civil conspiracy. The court presented alternative damage awards under either federal or state law: $6,432,600 plus costs and reasonable attorney fees for the RICO violations; or in the alternative, $2,144,200 for the state claims of breach of fiduciary duty, negligent misrepresentation, fraud, and civil conspiracy.

Pursuant to the civil RICO statute, the plaintiffs filed an application for an award of attorneys' fees and court costs. The district court ordered that plaintiffs were entitled to $74,145.25 in attorneys' fees from Bradley. Bradley now appeals both the judgment and the attorneys' fees.

II.    ANALYSIS

A.    SUFFICIENCY OF EVIDENCE

Bradley contends that the district court clearly erred in finding that the named plaintiffs suffered all the damages awarded.[2] "When a judgment after a

---

[1] However, Bradley testified that he "had some [conversations] with Lukinovich."

[2]    This challenge is raised with respect to all the theories of liability found by the district court: RICO, breach of fiduciary duty, negligent misrepresentation, fraud and civil

bench trial is on appeal, we review the findings of fact for clear error and the legal issues de novo. *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 375 (5th Cir. 2000). Under the clearly erroneous standard, we will reverse only if we have a definite and firm conviction that a mistake has been committed." *Id.* The district court's determination of damages is an issue of fact and thus reviewed for clear error. *Id.* at 379. If the credibility of a witness is a factor in the district court's decision, "[t]he burden of showing that the findings of the district court are clearly erroneous is heavier" because "due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." *Id.* at 375 (quotations omitted).

Bradley argues that the plaintiffs did not show that the losses were only incurred by the named plaintiffs—as opposed to other Ducote family members or entities not named as plaintiffs. We agree that the testimony and documents presented by the plaintiffs at the very brief bench trial did not demonstrate that the damages alleged were suffered by the named plaintiffs. Nonetheless, the deemed admissions, which Bradley does not expressly challenge on appeal, are sufficient to demonstrate that the named plaintiffs were injured by Bradley's conduct.[3] Without setting forth all the deemed admissions, we quote request for admission numbers 2, 6, 8, and 12 as follows:

> [No. 2]     Please admit that you have conducted substantial business in this Eastern District of Louisiana, that the violations complained of by Plaintiffs occurred in this District, that you transact or have transacted your affairs in this District, and that your conduct, upon which this action is founded, was directed at and intended to injure Plaintiffs in this, the Eastern District of Louisiana.

conspiracy.

[3] The *amount* of damages shown by the plaintiffs is discussed *infra* at II. D.

[No. 6]     Please admit that you entered into various arrangements with other defendants named in this lawsuit to market, promote and opine regarding certain tax strategies to high net-worth individuals and business entities, such as and including the Plaintiffs herein in order to generate exorbitant fees by misrepresentations and advice that you and the other Defendants knew or should have known were improper and illegal.

[No. 8]     Please admit that you knew that the tax strategy that was marketed to the Plaintiffs herein was similar to prior strategies found abusive by the IRS and that, as a result, it would be intensely scrutinized and likely regarded as a sham by the tax authorities.

[No. 12]     Please admit that you did no work for the $112,500.00 fee you billed to Jenkins & Gilchrist with regard to any matters relating to Ducote Jax Holdings, LLC, Wayne C. Ducote, David L. Ducote, and/or Suzette A. Ducote.

Although the requests for admissions could have been drafted more precisely, we are persuaded that the deemed admissions encompass conduct rendering Bradley liable to the named plaintiffs. The district court's finding does not leave us with a definite and firm conviction that a mistake has been made. Bradley thus has failed to demonstrate clear error.

## B.     FRAUD

Bradley next argues that the district court erred in finding that the plaintiffs were the victims of fraud. Bradley asserts that the evidence shows that Ducote was not induced by fraudulent claims but instead by the fact that Bank One, a fiscally conservative institution, and the national prestigious law firm of Jenkens & Gilchrist were endorsing the tax strategy. Bradley points to testimony from Ducote that tends to support this assertion. However, Ducote also testified, among other things, that he relied on misrepresentations that the strategy was "bullet proof." The district court, however, was free to credit Ducote's testimony as to what induced him to agree to use this tax strategy. Bradley has not shown this finding clearly erroneous.

## C. RICO CLAIMS

Bradley next contends that the district court erred in finding that the requirements to establish a civil RICO violation were met. "RICO creates a civil cause of action for '[a]ny person injured in his business or property by reason of a violation of section 1962.'" *Brown v. Protective Life Ins. Co.*, 353 F.3d 405, 407 (5th Cir. 2003) (quoting 18 U.S.C. § 1964(c)). "To state a RICO claim under § 1962, there must be: (1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Id.* (internal quotation marks and citation omitted). "A pattern of racketeering activity requires two or more predicate acts and a demonstration that the racketeering predicates are related and amount to or pose a threat of continued criminal activity." *Id.*

We are persuaded that Bradley's deemed admissions and the trial testimony support those three elements. The district court found that Bradley was a person and the enterprise was an association-in-fact with the other named defendants. The district court found that Bradley entered into various arrangements with other defendants to market, promote, and opine on certain tax strategies to high net-worth individuals and business entities, including the instant plaintiffs, to generate exorbitant fees by giving false and misleading advice that Bradley knew or should have know were improper and illegal. The deemed admission numbers 6 and 7 support the district court's findings.[4]

The district court also found that Bradley engaged in a pattern of wrongful conduct through numerous predicate acts of mail and wire fraud. The district

---

[4] Request for admission number 6 is quoted *supra* at II. A. Request for admission number 7 provided as follows: "Please admit that you colluded with other of the defendants named in the instant lawsuit in order to assist in inducing Plaintiffs to engage in tax strategies."

court relied on deemed admission number 5 and trial testimony.[5] At trial, Bradley testified that he used the telephone to make a call to determine what he was supposed to do with the $255,000 that had been wired to his bank account. Bradley admitted to wiring $46,000 to Ohle and to using the fax machine to send a tax opinion to the law firm. Bradley also admitted to writing $25,000 worth of checks to himself for less than 10 hours of billable work.

With respect to the substantive element of § 1962, the district court found that Bradley violated § 1962(a), (c), and (d). This Court has:

> reduced those subsections to their simplest terms to mean that: (a) a person who has received income from a pattern of racketeering activity cannot invest that income in an enterprise; . . . (c) a person who is employed by or associated with an enterprise cannot conduct the affairs of the enterprise through a pattern of racketeering activity; and (d) a person cannot conspire to violate subsections (a), (b), or (c).

*St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 439 (5th Cir. 2000).

Bradley contends that the district court erred in finding that he violated § 1962(a) because there was no evidence at trial that any of the money he distributed was invested into any enterprise. The district court found that plaintiffs were injured by Bradley's use or investment of racketeering proceeds into the RICO enterprise by Bradley's wiring of the money ($46,000 to Ohle and $184,000 to JDC Group), which permitted the defendants to fraudulently obtain money from the plaintiffs for work they did not do. Bradley does not dispute that he sent these monies. "[T]his Circuit's precedent dictates that a plaintiff need prove only that illegally derived funds flowed into the enterprise." *St. Paul Mercury Ins.*, 224 F.3d at 442 (internal quotation marks and citation omitted).

---

[5] Request for admission number 5 provided as follows: "Please admit that your acts and conduct described in Plaintiff's Third Amended and Supplemental Complaint directly or indirectly used the means of interstate commerce, including the mails and telephones."

Bradley's act of sending money to at least one person (Ohle) in the enterprise meets that requirement.

Bradley also claims that "[t]here is no evidence that he acquired or maintained an interest in anything." However, acquiring or maintaining an interest in the enterprise is an element of § 1962(b). The district court expressly found that Bradley violated § 1962(a), (c), & (d), but *not* § 1962(b). This contention is meritless.[6]

### D.    AMOUNT OF DAMAGES

Bradley contends that the district court erred by finding that Bradley's violations of § 1962(c) & (d) caused the plaintiffs' tax assessment of $3,146,300. Thus, he argues that the court erred in including that amount in the damages award. Absent an error of law, we review the district court's determination of damages, a factual finding, for clear error. *Cleere Drilling Co. v. Dominion Exploration & Production, Inc.*, 351 F.3d 642, 645 (5th Cir. 2003). As we have explained, clear error exists when, "the reviewing court upon examination of the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Justiss Oil Co. v. Kerr-McGee Refining Corp.* 75 F.3d 1057, 1062 (5th Cir. 1996).

Based on the findings that Bradley violated § 1962(c) & (d), the district court awarded the following damages:  $3,146,300, the amount assessed as income tax; $314,630, the tax penalty; $499,770, the interest on the tax assessment; and $1,033,500, the fees of the attorneys, accountants and advisors. These damages totaled $4,994,200. After  deducting $2,850,000, the amount

---

[6]   Without argument or citation, Bradley alleges that "[t]here was no showing that a criminal enterprise existed separate and apart from any alleged acts of racketeering." Having failed to sufficiently brief this claim, Bradley has abandoned it. *Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993). Nonetheless, it appears that the separate-and-apart requirement is met because Bradley, as the RICO "person" who committed the predicate acts, is distinct from the enterprise. *See St. Paul Mercury Ins.*, 224 F.3d at 446–47.

that the plaintiffs received in exchange for settling their claims against all the other defendants, the damages totalled $2,144,200.[7]  Pursuant to the RICO statute, the district court then trebled the damages for a total of $6,432,600. *See* 18 U.S.C. § 1964(c).

Bradley concedes that the tax strategy could have caused the tax penalty and interest.  Nonetheless, he argues that there is no evidence that the strategy caused the assessment of income taxes and thus the taxes should not be included as damages.   In response, the plaintiffs rely on Ducote's testimony during the bench trial.  The plaintiffs contend that Ducote testified that, had he not participated in the instant tax strategy, he would have employed another tax management or deferral strategy and therefore would not have incurred a tax liability of over three million dollars.  More specifically, in his testimony, Ducote referred to a "103 exchange, which is a deferral [in] the Internal Revenue Code, or ways to accelerate depreciation or other things of that nature."  However, Ducote never explained how it would lessen, much less how it would eliminate all tax liability.  This is not surprising in light of Ducote's admission that he "frankly . . . did not fully and completely understand all aspects" of the tax strategy that was actually implemented.  When questioned with respect to his capacity as a trustee, he answered that he was "not exactly clear" with respect to the roles of the various entities and trust "other than the trust mixture was a component of the Jenkens' transaction."  Additionally, during oral argument before this Court, the plaintiffs' counsel first appeared to admit that the plaintiffs would have had to pay at least some taxes.  Counsel subsequently admitted that they did not address this issue in the district court and that she did not "understand the tax sheltering aspect of it." When further pressed as to what alternative strategy or shelter the plaintiffs would have utilized and how

---

[7]   We note that the plaintiffs-appellees do not challenge on appeal the district court's calculations of damages.

much tax relief it would have provided, counsel never specifically answered the question except to point to Ducote's above testimony, which we conclude falls far short of demonstrating that their tax assessment (in excess of $3 million) would have been alleviated or entirely eliminated.

In a somewhat analogous case, this Court affirmed an award of damages that "represented the difference between the amount of money the [plaintiffs] would have paid the IRS had the attorneys advised them correctly and the amount they eventually had to pay." *Streber v. Hunter*, 221 F.3d 701, 717 (5th Cir. 2000). In that case, two sisters, Tracy and Terry Streber, brought suit against lawyers who had given them advice that ultimately resulted in a tax penalties and interest.[8] The jury found that the lawyers committed legal malpractice, breached the plaintiffs' fiduciary duties, and violated the Texas Deceptive Trade Practices Act. The jury awarded over $2 million in actual damages, and the "most significant award of actual damages by the jury was in the form of 'interest differential.'" *Streber*, 221 F.3d at 734.[9] Interest differential is "the difference between the interest earned by Terry from the [money constituting the eventual tax assessment] while she had it and the interest charged by the IRS." *Id.* Pursuant to state law, the damages had to be proven with reasonable certainty. We noted that Terry testified to the "exact amount of interest she earned on her investments, and to the exact amount charged by the IRS." *Id.* Also, two other witnesses, a certified public account and Terry's investment advisor, testified regarding the interest differential. We found that Terry had proven her damages with reasonable certainty because "the testimony told the jury exactly how much interest Terry had earned on the [tax

---

[8] The sisters did not appeal the tax assessment. *See Streber v. C.I.R.*, 138 F.3d 216, 217 n.3 (5th Cir. 1998). They did appeal the penalties for negligence and substantial understatement, but this Court reversed the penalties. *Id.* at 219–23.

[9] After the verdict, Tracy agreed to a settlement.

assessment] and exactly how much interest the IRS charged her for holding on to it." *Id.*

Although *Streber* involved state law, it informs our decision. Here, like *Streber,* the damages "represented the difference between the amount of money the [plaintiffs] would have paid the IRS had the attorneys advised them correctly and the amount they eventually had to pay." *Streber*, 221 F.3d at 717. In contrast, as previously set forth, the plaintiffs failed to explain which alternative tax strategy they would have used, much less precisely how such an alternative vehicle would have eliminated or alleviated their tax assessment. In view of the plaintiffs' complete failure to prove an alternative tax strategy and calculate how it would relieve them of their entire tax assessment, we are left with the definite and firm conviction that a mistake has been made. *Cf. Rogers v. McDorman*, 521 F.3d 381, 395–97 (5th Cir. 2008) (affirming a take-nothing RICO judgment based on failure to prove damages). After the tax assessment is subtracted from the amount of damages, the net liability is zero because the district court credited the $2,850,000 the plaintiffs received from the other defendants' settlement agreement. More specifically, the district court found that Bradley was liable to the plaintiffs for $2,144,200, after crediting the amount of money the plaintiffs received from the other defendants' settlement agreement.[10] Thus, once the amount of the tax assessment, $3,146,300, is subtracted from the $2,144,200 damage award, the plaintiffs are left with no damages flowing from the § 1962(c) & (d) violations. The plaintiffs "had a full opportunity to establish [their] claim for . . . damages; however, having failed to do so, [they] may not retry [their]

---

[10] The district court also awarded the same amount of damages ($2,144,200) to the plaintiffs based on its findings that Bradley was liable for breach of fiduciary duty, negligent misrepresentation, fraud and civil conspiracy under Louisiana state law. However, the district court presented the federal RICO damages and the Louisiana state law damages as alternative awards. The plaintiffs elected the RICO damages. In any event, the plaintiffs would not be entitled to the damages under Louisiana law because the district court calculated the two damage awards in identical fashion except that the RICO damages were trebled.

14

claim[s] for these damages." *Great Pines Water Co., v. Liqui-Box Corp.*, 203 F.3d 920, 925 (5th Cir. 2000). The damages award of $6,432,600 is therefore reversed.

### E. ATTORNEYS' FEES

Finally, Bradley requests this Court to reduce or eliminate the award of attorneys' fees "if the net damages for Civil RICO violations is reduced to nothing." Because Bradley offers no argument or precedent in support of his request, he has effectively abandoned this claim. *Yohey*, 985 F.2d at 224–25. Nonetheless, even if we considered the claim properly before us, we would affirm the award of attorneys' fees. This Court has rejected a rule that the award of attorneys' fees should be proportional to the damage award in a civil RICO case. *R.M. Perez & Assoc., Inc. v. Welch*, 960 F.2d 534, 542 (5th Cir. 1992).[11] Further, we recognize that the instant attorneys' fees provision, 18 U.S.C. § 1964(c),[12] tracks the attorneys' fee provision of the Clayton Act, 15 U.S.C. § 15(a),[13] which involves antitrust actions. Thus, this Court's precedent interpreting the essentially identical provision in the Clayton Act is instructive, if not controlling. While interpreting the antitrust attorneys' fee provision, we explained that "the actual recovery of compensatory damages [is] irrelevant to the recoverability of attorneys' fees." *Sciambra v. Graham News Co.*, 892 F.2d 411, 415-16 (5th Cir. 1990). We held that to recover attorneys' fees, a plaintiff must demonstrate

---

[11]  *Accord Northeast Women's Center v. McMonage,* 889 F.2d 466, 471-75 (3d Cir. 1989) (holding that it is not permissible for a trial court to make a reduction in the attorneys' fees based solely on the amount of damages obtained in a civil RICO case).

[12]  Section 1964(c) provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter . . . shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . ."

[13] The Clayton Act provides that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . . and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."  15 U.S.C. § 15(a).

proof of a violation of antitrust laws and proof of injury. *Id.* at 415. Although the plaintiff was awarded $0 in compensatory damages, because this Court found an antitrust violation and the fact of damage, we affirmed the reasonable award of attorneys' fees. *Id.* at 414–16.

Here, the district court awarded the plaintiffs $74,156.25 in attorney's fees. Bradley does not (and cannot credibly) dispute that the RICO violations caused the tax interest and penalty, resulting in damages to the plaintiffs in the amount of $814,400. Also, Bradley's admitted actions in faxing the fraudulent invoice regarding the amount of work he had done for the plaintiffs certainly caused the plaintiffs monetary damages. However, after the other defendants' settlement ($2,850,000) is credited against the unchallenged damages found by the district court, there is nothing left to award. In other words, the plaintiffs did prove that they suffered damages—it is just that the other defendants' settlement precludes a double recovery from Bradley under the district court's calculations. Bradley has failed to show that the attorneys' fee award was unreasonable. We are persuaded that because the plaintiffs have established RICO violations and proof of injury, they are entitled to the amount of attorneys' fees in the amount of $74,156.25.

## III.   CONCLUSION

For the above reasons, the portion of the district court's judgment finding Bradley violated § 1962(a), (c) & (d) of the civil RICO statute and also finding Bradley liable for breach of fiduciary duty, negligent misrepresentation, fraud and civil conspiracy under Louisiana state law is AFFIRMED. Nonetheless, we REVERSE the portion of the district court's judgment awarding the plaintiffs $6,432,600 in civil RICO damages, and, in light of the rule against double recovery, RENDER judgment that the plaintiffs take nothing with respect to damages under the RICO claim. Additionally, the award of attorneys' fees in the amount of $74,156.25 is AFFIRMED.

AFFIRMED in part; REVERSED in part.