# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 30, 2022

Lyle W. Cayce
Clerk

No. 21-20274
consolidated with
No. 21-20474

DHI Group, Incorporated; Rigzone.com, Incorporated,

*Plaintiffs—Appellees*,

*versus*

David W. Kent, Jr.; Single Integrated Operations
Portal, Incorporated,

*Defendants—Appellants*,

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CV-1670

Before Higginbotham, Haynes, and Wilson, *Circuit Judges*.

Per Curiam:*

DHI Group, Inc. and Rigzone.com (collectively, "Plaintiffs") filed this civil lawsuit against David Kent and Single Integrated Operations Portal, Inc. ("Oilpro") (collectively, "Defendants"), alleging, inter alia, claims

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

under the Texas Uniform Trade Secrets Act ("TUTSA"), Texas Theft Liability Act ("TTLA"), and Racketeer Influenced and Corrupt Organizations Act ("RICO"). The district court entered a final judgment awarding Rigzone approximately $3 million in damages. All parties appealed.

For the following reasons, we AFFIRM in part and REVERSE in part.

## I.    Background

Kent was the creator and founder of Rigzone.com, an oil and gas recruiting and employment opportunity website. To generate income, Rigzone used its résumé database to gain subscribers. Oil and gas companies, looking to recruit and hire new employees, would purchase Rigzone subscriptions to search the résumé database. The résumés themselves were not sold individually; they could only be accessed by purchasing a subscription to the database.

After selling Rigzone to DHI, Kent left the company and launched Oilpro. He proceeded to illegally hack into Rigzone's database and copy hundreds of thousands of résumés between 2013 and 2015. The parties dispute Kent's intentions behind these hacks; there is some indication that his actions were done to benefit Oilpro.

Kent's hacks were eventually discovered, and he was subsequently arrested and criminally charged. He pled guilty to violating the Computer Fraud and Abuse Act ("CFAA") for his unauthorized access of Rigzone's résumé collection. He was sentenced to one year and one day in prison and ordered to pay approximately $3.3 million in restitution.

While Kent's criminal case was pending, Plaintiffs filed the instant action against Kent and Oilpro, asserting various claims under the TUTSA, RICO, TTLA, and CFAA, as well as common law claims for breach of

fiduciary duty and misappropriation of confidential information.[1]    In response, Oilpro asserted counterclaims against Rigzone and DHI under the CFAA, as well as breach of contract and common law misappropriation. Before the jury returned a verdict, the district court granted judgment as a matter of law in favor of Oilpro as to Plaintiffs' claims because Plaintiffs did not oppose Defendants' Rule 50(a) motion as to their claims against Oilpro.

As for Kent, the jury found violations of: (1) TUTSA, awarding approximately $3 million in damages to Rigzone; and (2) Texas common law for the misappropriation of confidential information, awarding approximately $2.5 million in damages.  The jury also found a (3) violation of RICO and (4) breach of a fiduciary duty but did not award damages as to either claim.  As for the remaining claims, the jury found in Kent's favor as to the CFAA claim and in Plaintiffs' favor on all of Oilpro's counterclaims.

In light of the jury verdict, the parties filed additional motions. Defendants moved to (1) offset their damages with the $3.3 million paid as criminal restitution and sought relief under Federal Rules of Civil Procedure 50, 59, and 60; and (2) recover fees and costs for their successful defense of the TTLA claim.  Plaintiffs moved, inter alia, for an award of attorney's fees on their RICO claim.  Oilpro moved, inter alia, for costs as a prevailing party under Rule 54(d).

The district court denied the various motions in an extensive order discussing the parties' arguments.  *See DHI Grp., Inc. v. Kent*, No. 16-CV-1670, 2021 WL 4203235, at *1–9 (S.D. Tex. Aug. 23, 2021).  Specifically, the court found that "Plaintiffs have not shown they were injured in their business or property by Kent's RICO violation," and "viewing the case as a whole, Oilpro is not the prevailing party" under Rule 54. *Id.* at *2, *4.  As to

---

[1] Plaintiffs eventually agreed that their TTLA claim was preempted by TUTSA.

Plaintiffs' TTLA claim, the district court explicitly acknowledged that "Defendants prevailed against Plaintiffs' TTLA claim" and were "thus entitled to reasonable and necessary attorneys' fees on the TTLA claim." *Id.* at *5. However, the court denied Defendants' motion for fees because of insufficient segregation and Defendants' failure "to meet their burden to produce evidence sufficient to perform the lodestar calculation." *See id.* at *5–8.

Later, the court denied, with no discussion, Defendants' motion for offset and relief and entered its final judgment, which: (1) awarded Plaintiff Rigzone $3,003,036.90 in damages—exactly the same amount the jury awarded on the TUTSA trade secret claim; (2) ordered that both DHI and Defendants "take nothing"; and (3) determined that the amount of pre-judgment and post-judgment interest, attorney's fees, and costs would be decided at a later date. Defendants appealed, and Plaintiffs cross-appealed.

## II.    Standards of Review

Several relevant and sometimes overlapping standards guide our review.

### A. Rule 50(a) and the Jury Verdict

Regarding Plaintiffs' TUTSA claim, Defendants argue that the district court erroneously denied Kent's Rule 50(a) motion for judgment as a matter of law. We review such a denial *de novo*, using "the same standard as the district court." *Kevin M. Ehringer Enters., Inc. v. McData Servs. Corp.*, 646 F.3d 321, 324 (5th Cir. 2011).[2] In ruling on this motion, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may

---

[2] "A Rule 50(a) motion is a challenge to the legal sufficiency of the evidence." *Kevin M. Ehringer Enters.*, 646 F.3d at 324.

No. 21-20274 c/w No. 21-20474

not make credibility determinations or weigh the evidence." *Id.* at 325 (quotation omitted).

With respect to the jury verdict, this court's standard of review "is especially deferential." *Apache Deepwater, L.L.C. v. W&T Offshore, Inc.*, 930 F.3d 647, 653 (5th Cir. 2019) (quotation omitted). "A party is only entitled to judgment as a matter of law on an issue where no reasonable jury would have had a legally sufficient evidentiary basis to find otherwise." *Id.* Therefore, we will not conclude "the district court erred unless the evidence at trial points so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 874 (5th Cir. 2013) (internal quotation marks and citation omitted).

## B. Damages

We review a district court's damages award for clear error as a finding of fact, though "conclusions of law underlying the award are reviewed *de novo*." *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 213 (5th Cir. 2006) (per curiam).

## C. Remittitur

We construe Defendants' motion for offset as a motion for remittitur, which seeks "[a]n order awarding a new trial, or a damages amount lower than that awarded by the jury." *Remittitur*, BLACK'S LAW DICTIONARY (11th ed. 2019). Generally, remittitur is only ordered when the court is "left with the perception that the verdict is clearly excessive." *Thomas v. Tex.*

*Dep't of Crim. Just.*, 297 F.3d 361, 368 (5th Cir. 2002) (quotation omitted). We review the denial of remittitur for abuse of discretion. *Id.*[3]

### D. Rule 54(d) Costs

We review an award of costs under Rule 54(d) "for a clear abuse of discretion." *United States ex rel. Long v. GSDMIdea City, L.L.C.*, 807 F.3d 125, 128 (5th Cir. 2015); *see Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006) (same, regarding the denial of costs). However, we review a "'prevailing party' determination" *de novo*. *Long*, 807 F.3d at 128. There is "a strong presumption that the court will award costs to the prevailing party." *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1017 (5th Cir. 1992). If "the court does not award costs to the prevailing party," the district court must "state its reasons." *Id.*

### E. Attorney's Fees

Generally, "[a]n award of attorney's fees is entrusted to the sound discretion of the trial court." *Transverse, L.L.C. v. Iowa Wireless Servs., L.L.C.*, 992 F.3d 336, 343 (5th Cir. 2021) (quotation omitted).[4] The availability of attorney's fees is a question of law that we review *de novo*. *Id.* But we review a district court's decision to grant or deny attorney's fees for abuse of discretion. *See id.*; *Davis v. Credit Bureau of the S.*, 908 F.3d 972, 975

---

[3] Texas courts review motions for remittitur for factual sufficiency. *Pope v. Moore*, 711 S.W.2d 622, 624 (Tex. 1986) (per curiam). This standard differs from the federal standard and appears to be even more deferential to the jury verdict. *See Larson v. Cactus Util. Co.*, 730 S.W.2d 640, 641 (Tex. 1987) ("To review trial court remittiturs under a different standard and continue the 'abuse of discretion' test conflicts with a system that allows juries to set damages. The abuse of discretion standard robs of its vitality the constitutionally mandated right of trial by jury.").

[4] "State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

(5th Cir. 2018) (per curiam).[5] An abuse of discretion occurs when the district court "bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Davis*, 908 F.3d at 975 (quotation omitted). In making this determination, we "review[] the factual findings supporting the grant or denial of attorney's fees for clear error and the conclusions of law underlying the award *de novo*." *Id.* (quotation omitted).

### III.    Discussion

There are several issues on appeal related to: (1) TUTSA, (2) TUTSA damages, (3) the offset of damages, (4) Rule 54 costs, (5) TTLA, and (6) RICO.[6] We discuss each issue in turn.

### A. TUTSA claim

The parties dispute whether there is sufficient evidence of a trade secret. TUTSA defines a "trade secret" as:

> all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, *compilation*, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential

---

[5] Texas uses similar standards of review. *Brinson Benefits, Inc. v. Hooper*, 501 S.W.3d 637, 641 (Tex. App.—Dallas 2016, no pet.) ("We therefore review the issue of whether appellees were entitled to an award of attorney's fees under the TTLA *de novo*. If we determine any of the appellees were entitled to an award of attorney's fees, we then review the trial court's award of attorney's fees for an abuse of discretion." (citation omitted)).

[6] As noted above, the jury awarded approximately $2.5 million to Plaintiffs on their misappropriation of confidential information claim. However, it appears that the district court did *not* award Plaintiffs any damages on this claim, and Plaintiffs conceded it was likely preempted by TUTSA, at least as to Rigzone. Because we uphold the TUTSA damages award, we need not reach this issue or opine on whether Texas law recognizes a cause of action for misappropriation of confidential information.

No. 21-20274 c/w No. 21-20474

customers or suppliers, whether tangible or intangible and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing.

Tᴇx. Cɪᴠ. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ Aɴɴ. § 134A.002(6) (emphasis added).

The statute also requires that: (1) "the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and" (2) "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." *Id.* § 134A.002(6)(A), (B).

Defendants maintain that the stolen résumés were not a trade secret, and their value derived from "being shared" rather than "being kept secret."[7] Plaintiffs, in turn, cite to witness testimony indicating that it took a considerable amount of time and monetary resources to collect the résumés; the uniqueness of the résumé collection provided it a competitive advantage; and customers pay significant sums for the right to access the résumé database. Moreover, Plaintiffs argue that "Rigzone took reasonable measures" to maintain the secrecy of the contents of its résumé database, including a contract prohibiting the reselling of and limiting the use of

---

[7] Specifically, Defendants focus on the "individual" aspect of the resumes, largely discounting Plaintiffs' argument that "the alleged trade secret was not individual résumés but a compilation." Indeed, Defendants seemingly admit that Plaintiffs' argument is based on a "compilation theory," but they maintain that is "no basis for affirmance" because "there is no evidence—and no finding—about a compilation of résumés." Defendants' counterargument is not supported by the record. Moreover, as Plaintiffs note, the jury instructions expressly provided that the definition of a trade secret includes a "compilation."

information obtained from the database, as well as password protected access for subscribers.[8]

We agree with Plaintiffs. There is little doubt that a "compilation" qualifies as a trade secret, and there is sufficient evidence that the value of the résumés stemmed from the "comprehensive" nature of Rigzone's collection (even if the individual résumés were not themselves trade secrets). Indeed, Texas courts have recognized "customer lists, pricing information, client information, customer preferences, buyer contacts, market strategies, blueprints, and drawings" as examples of viable trade secrets. *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 22 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd); *see Nova Consulting Grp., Inc. v. Eng'g Consulting Servs., Ltd.*, 290 F. App'x 727, 735 (5th Cir. 2008) (holding, under Texas law, "client information," including "names, locations, cell-phone and work-telephone numbers, and other important information" inputted into a database was a trade secret); *In re AmeriSciences, L.P.*, 781 F. App'x 298, 310 (5th Cir. 2019) (per curiam) ("Whether this material is branded as a network or as a list, it was valuable information easily characterized as a trade secret."). Rigzone's résumé database fits comfortably within these general parameters.

We turn to the question of sufficient evidence that Rigzone took "reasonable measures under the circumstances to keep the information secret."[9] There is evidence that Rigzone customers had to sign contracts

---

[8] Rigzone also locked users out of the database if they downloaded too many resumes over a short period of time. This locking function protected the compilation aspect of the trade secret.

[9] The fact that the individual resumes are publicly accessible or that customers could pay for unlimited access to the database or downloads does *not* destroy the secret. *See Bishop v. Miller*, 412 S.W.3d 758, 767 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (noting that even if "some or all of the components of the trade secret are well-known,"

between 2011 and 2016 to gain access to the database. But the contract provided by Plaintiffs does not explicitly prohibit the sharing of résumés; instead, it refers to the terms and conditions on Rigzone's website and compels the customer to "comply with such terms of use." The website's terms, in turn, forbid (without "prior written authorization") the reselling or making available of "any information obtained" from the website, "including without limitation the résumés/CVs," as well as the sharing of login information, user identification, and passwords.[10]

Despite this lack of direct prohibition, customers had constructive knowledge of the website's terms and conditions after signing the written agreement. Under the circumstances, this created a valid contractual obligation.[11] Coupled with its other security protocols, the evidence supports a jury finding that Rigzone took "reasonable" precautions to protect its trade secret. We therefore conclude that the district court did not err by accepting the jury verdict on this point and entering judgment in Rigzone's favor on its TUTSA claim.

---

that "does not preclude protection for a secret combination, compilation, or integration of the individual elements" (quotation omitted)); *Metallurgical Indus. Inc. v. Fourtek, Inc.*, 790 F.2d 1195, 1200 (5th Cir. 1986) ("If disclosure to others is made to further the holder's economic interests, it should, in appropriate circumstances, be considered a limited disclosure that does not destroy the requisite secrecy.").

[10] The website's terms also forbid activities that would "otherwise allow multiple offices or users to access the Rigzone service on a basis that is other than what was originally subscribed for."

[11] The agreement described on the website is known as a "'browsewrap' agreement," which "does not require the user to manifest assent to the terms and conditions expressly." *Sw. Airlines Co. v. BoardFirst, L.L.C.*, No. 3:06-CV-0891-B, 2007 WL 4823761, at *4 (N.D. Tex. Sept. 12, 2007). "A party instead gives his assent simply by using the website." *Id.* Importantly, "the validity of a browsewrap license turns on whether a website user has actual or constructive knowledge of a site's terms and conditions prior to using the site." *Id.* at *5.

## B. TUTSA Damages

The parties next dispute whether the district court erred in awarding approximately $3 million in TUTSA damages based on the jury verdict. The jury was instructed to award damages based on "[t]he value that a reasonably prudent investor would have paid for the trade secret." Plaintiffs argue this metric was appropriate and "a bedrock damages measure in trade-secret cases." Defendants contend that "a trade secret's value is recoverable only if that value was destroyed by the misappropriation," which Plaintiffs did not prove.

We agree with Plaintiffs that complete destruction of a trade secret's value is not necessary under the reasonably prudent investor measure of damages. As we have previously held, "the value of the secret to the defendant . . . is usually the accepted approach where the secret has *not been destroyed* and where the plaintiff is unable to prove specific injury." *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 536 (5th Cir. 1974) (emphasis added). "Value to the defendant," in turn, "may be measured by . . . the value a reasonably prudent investor would have paid for the trade secret." *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 711 (Tex. 2016).[12] Because the jury used this metric to measure damages, we conclude the district court did not err in awarding approximately $3 million on the TUTSA claim based on the jury verdict. *See Wellogix*, 716 F.3d at 874.[13]

---

[12] "Value to the defendant" could also "be measured by the defendant's actual profits resulting from the use or disclosure of the trade secret (unjust enrichment), . . . or development costs that were saved." *Sw. Energy*, 491 S.W.3d at 711.

[13] During oral argument, Defendants appeared to abandon any argument that the reasonably prudent investor metric is not a valid measure of damages. Instead, Defendants asserted that there is a lack of sufficient evidence to support the damages award.

To the extent Defendants argue that "the various damage measures continued to be viable insofar as they fit within the statutory text of TUTSA," we note that TUTSA

## C. Offset of Damages

Related to the damages issue, Defendants argue that the district court erred in failing to offset the $3 million damages award with the $3.3 million paid by Kent as criminal restitution. According to Defendants, the one-satisfaction rule prohibits double recovery under Texas common law, as well as under state and federal restitution statutes. *See* Tex. Code Crim. Proc. Ann art. 42.037(f)(2); 18 U.S.C. § 3664(j)(2). Under this double recovery theory, Defendants maintain that Rigzone "already recovered" via Kent's criminal restitution payment because he paid *both* Rigzone and DHI—hence, there was only "one victim." Unsurprisingly, Plaintiffs disagree with this "one victim" characterization.[14]

Although there is conflicting evidence on this issue, we conclude that Rigzone and DHI were *not* treated as the same victim. Kent was ordered to pay criminal restitution to DHI—*not Rigzone*. Moreover, the jury instructions specifically identified Rigzone—*not DHI*—as the entity that owned the trade secret and was therefore entitled to damages. Finally, the

---

does *not* expressly limit damages to those articulated in the statute. Rather the statute uses permissive language ("include") to describe possible damages. *See* Tex. Civ. Prac. & Rem. Code Ann. § 134A.004. Given the lack of an explicit limitation in the statute and no Texas case holding that "reasonably prudent investor" damages are no longer recoverable, deference to the jury verdict is appropriate. *See Apache*, 930 F.3d at 652–53.

[14] Plaintiffs make three arguments explaining why Defendants' offset argument fails:

> (1) Kent cites no authority that entitles him to any civil settlement credit against Rigzone based on the criminal restitution he paid to DHI; (2) Kent failed to show that Rigzone recovered some portion of the restitution he paid DHI; and (3) Rigzone *proved* it did not receive a penny of the restitution Kent paid to DHI.

We need not address all these arguments because we conclude that DHI and Rigzone were *not* considered one victim.

district court's final judgment reflected that understanding by awarding Rigzone approximately $3 million in damages and *nothing to DHI*. Because it is reasonably clear that Rigzone and DHI were treated as separate entities regarding the TUTSA claim and there was no double recovery, we conclude the district court did not abuse its discretion in denying the Defendants' motion for offset (construed as a remittitur). *See Thomas*, 297 F.3d at 368.[15]

### D. Rule 54(d)

The district court dismissed all Plaintiffs' claims against Oilpro, which later moved for costs under Rule 54(d) as a "prevailing party." *See* FED. R. CIV. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."). The district court denied this motion, noting that "Rigzone is the only party in whose favor a judgment was entered in this case," and "[n]either Defendant prevailed on any of their counterclaims." *DHI Grp.*, 2021 WL 4203235, at *4.

In deciding whether a party prevailed, "[t]he case must be viewed as a whole." *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 713 F.2d 128, 131 (5th Cir. 1983). Importantly, it is unnecessary for a party to "prevail on every issue in order to be entitled to costs." *Fogleman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir. 1991). Here, Oilpro prevailed on its defense but lost on its counterclaims. Because the district court could have reasonably found that Oilpro did not prevail on its case as a whole and the deferential abuse of

---

[15] The jury instructions did refer to "Plaintiffs" regarding the misappropriation of confidential information claim. However, that claim was distinct from the TUTSA claim, which specifically refers to Rigzone. To the extent this creates ambiguity, we resolve it in favor of the district court's denial. *See Thomas*, 297 F.3d at 368.

discretion standard applies, we conclude the district court did not err in denying Oilpro costs under Rule 54(d). *See Pacheco*, 448 F.3d at 793.

### E. TTLA

The parties also disagree as to whether the district court erred in failing to award Defendants attorney's fees and costs under the TTLA: "Each person who prevails in a suit under this [statute] shall be awarded court costs and reasonable and necessary attorney's fees." Tex. Civ. Prac. & Rem. Code Ann. § 134.005(b).

Here, the district court expressly acknowledged that "Defendants prevailed against Plaintiffs' TTLA claim" and were "thus entitled to reasonable and necessary attorneys' fees on the TTLA claim." *DHI Grp.*, 2021 WL 4203235, at \*5. Yet the court denied Defendants' motion for fees and costs due to calculation concerns. *Id.* at \*5–8. Because Defendants were "entitled to *some* fee award on the TTLA claim," the district court could not just deny their motion. *See Transverse*, 992 F.3d at 346 (emphasis added). Accordingly, we remand for reconsideration of attorney's fees and costs on the TTLA claim.

### F. RICO

Lastly, the parties dispute whether the district court erred in failing to award Plaintiffs attorney's fees under RICO, which also contains a mandatory attorney's fees provision: "Any person injured in his business or property by reason of a violation of [RICO] may sue . . . and *shall recover* threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964 (emphasis added). To be entitled to attorney's fees, a plaintiff must show a "conclusive" injury, rather than a "speculative" one. *Gil Ramirez Grp., L.L.C. v. Hous. Indep. Sch. Dist.*, 786 F.3d 400, 409 (5th Cir. 2015) (quotation omitted); *see In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d 518, 523 (5th Cir. 1995). That said, fees are required

No. 21-20274 c/w No. 21-20474

when a plaintiff establishes RICO liability, even if a jury does *not* award any compensatory damages.[16] *See Sciambra v. Graham News*, 892 F.2d 411, 415–16 (5th Cir. 1990) (concluding that "the actual recovery of compensatory damages [is] irrelevant to the recoverability of attorneys' fees" under the Clayton Act attorney's fees provision); *see also Ducote Jax Holdings LLC v. Bradley*, 335 F. App'x 392, 402 (5th Cir. 2009) (per curiam) (relying on *Sciambra* and holding the same under RICO).

The district court applied relevant precedent and acknowledged the jury's finding that Kent had violated RICO. *See DHI Grp.*, 2021 WL 4203235, at *2. Nevertheless, the court declined to award Plaintiffs attorney's fees because they did not establish that "they were injured in their business or property by Kent's RICO violation." *Id.* In reaching this conclusion, the district court noted that the jury awarded zero damages on the RICO claim and rejected Plaintiffs' argument that the amount of damages awarded on the TUTSA and misappropriation of confidential information claims indicated "implied damages on the RICO claim."[17] *Id.* Since "Plaintiffs present[ed] no further proof of injury as to the RICO violation," the district court denied Plaintiffs' motion for attorney's fees. *Id.*

We agree with the district court's conclusion. Attorney's fees are required when a plaintiff establishes RICO liability, regardless of the amount, if any, of compensatory damages awarded. *See Sciambra*, 892 F.2d at 415–16; *Ducote*, 335 F. App'x at 402. But to establish liability, a plaintiff must

---

[16] Because the RICO attorney's fees provision "tracks the attorneys' fee provision of the Clayton Act," our "precedent interpreting the essentially identical provision in the Clayton Act is instructive, if not controlling." *Ducote*, 335 F. App'x at 402.

[17] The district court also noted that "the jurors were instructed not to increase or reduce the amount in one answer because of their answer to any other question about damages, or to speculate about what any party's ultimate recovery may be." *DHI Grp.*, 2021 WL 4203235, at *2 (internal quotation marks, brackets, and citation omitted).

demonstrate *both* a violation of the law *and* a resulting injury. *See Response of Carolina, Inc. v. Leasco Response, Inc.*, 537 F.2d 1307, 1320 (5th Cir. 1976) (noting that liability "means that one has violated the . . . laws and that violation has resulted in an injury to the business or property of the plaintiff, i.e., there was fact of damage"), *abrogated on other grounds by Cont'l T. V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36 (1977). A plaintiff may be able to establish a resulting injury (a "fact of damage") without showing "the amount of damages flowing from the defendant's wrongful conduct." *See Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, 21–22 (5th Cir. 1974). Plaintiffs, however, were unable to make that demonstration.

Here, Plaintiffs established that Kent committed a RICO violation but failed to show a RICO injury. On the issue of RICO liability, the jury was only instructed as to whether the statute was *violated*. Injury was addressed in a separate question assessing RICO damages. Though the jury found zero damages—which does not preclude attorney's fees—there is no indication that they understood RICO liability required *both* a violation *and* an injury, or that an injury could exist apart from damages.[18] Because a violation, by itself, does not establish RICO liability and Plaintiffs have otherwise failed to show a RICO injury,[19] we conclude the district court did not err in denying Plaintiffs attorney's fees under RICO. *See Davis*, 908 F.3d at 975.

---

[18] In other words, by addressing "RICO Liability" and "RICO Damages" in separate questions with different instructions, the jury instructions made it seem as if a violation of RICO was enough to establish liability without consideration of injury.

[19] On appeal, Plaintiffs argue that Kent is "estopped" from disputing a RICO injury because he "knowingly stipulated to the concrete financial loss he caused DHI" as part of his CFAA guilty plea, and they suffered a RICO injury because they incurred costs "to investigate how the resume thefts had occurred and how to prevent them in the future." These arguments are either unpersuasive, *see RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 330 (2016) ("A predicate offense implicates RICO when it is part of a 'pattern of racketeering activity'—a *series of related predicates that together* demonstrate the existence

No. 21-20274 c/w No. 21-20474

## IV.    Conclusion

For the foregoing reasons, we AFFIRM the district court's judgment regarding the TUTSA claim and damages, the denial of costs under Rule 54(d), and the denial of attorneys' fees under RICO.  We REVERSE and REMAND the court's determination regarding attorney's fees and costs related to the TTLA claim.

---

or threat of continued criminal activity." (emphasis added)), or waived, *see Arbuckle Mountain Ranch, Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 339 n.4 (5th Cir. 2016) ("Arguments subordinated in a footnote are insufficiently addressed in the body of the brief, and thus are waived." (internal quotation marks and citation omitted)).